TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00332-CV






Employees' Retirement System of Texas, Appellant



v.



Phyllis Jean Konkle McKillip, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 95-03585, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING 






 The Employees' Retirement System of Texas (ERS) appeals from a district court judgment
reversing the agency's final order in a contested case. We will modify the judgment and affirm it as
modified.


THE CONTROVERSY



 McKillip applied for disability benefits under the State of Texas Uniform Group Insurance
Program and Plan. See Tex. Ins. Code Ann. art 3.50-2 (West 1981 and Supp. 1997) (Ins. Code). Group
Life and Health Insurance (GLH), an insurer under the Plan, was a party in the contested case that followed
McKillip's application. (1) Blue Cross and Blue Shield of Texas, Inc., a health-insurance carrier under the
plan, was also a party in the contested case although it concerned only a claim for disability benefits. (2) 
After an evidentiary hearing before an administrative law judge employed by the State Office of
Administrative Hearings, the ERS denied McKillip's claim for disability benefits and issued a final order
to that effect. 

 McKillip sued in district court for judicial review of the agency decision. The court
reversed the agency decision and remanded the case to the ERS with certain instructions. ERS appealed
to this court on four points of error.


SUBJECT-MATTER JURISDICTION



 In its first point of error, the ERS contends the district court lacked subject-matter
jurisdiction to decide McKillip's statutory cause of action for judicial review. The agency argues as follows: 
Section 2001.176 of the Administrative Procedure Act (3) required that McKillip join GLH as a party within
thirty days of filing her petition in district court, which she failed to do. This omission, which ordinarily
results only in a want of personal jurisdiction, becomes a defect in subject-matter jurisdiction under the
doctrine established in Mingus v. Wadley, 285 S.W. 1084, 1087 (Tex. 1926), given the nature of the case: 
when a plaintiff brings a purely statutory cause of action in derogation of the common law, to recover a
statutory remedy, subject-matter jurisdiction is not presumed in the reviewing court, although it be a court
of general jurisdiction, and the record must affirmatively show as a jurisdictional fact that the plaintiff
complied strictly with the statutorily prescribed method for transferring the controversy from the
administrative department of government to the district court. See, e.g., Texas Catastrophe Property Ins.
Ass'n v. Council of Co-Owners of Saida II Towers Condominium Ass'n, 706 S.W.2d 644, 646 (Tex.
1986); City of Lubbock v. Bownds, 623 S.W.2d 752, 755 (Tex. App.--Amarillo 1981, no writ).

 We observe initially that APA section 2001.176 requires the filing of the plaintiff's petition
within the specified thirty days, in a Travis County District Court, but it specifies no time period for serving
a copy of the petition "on the state agency and each party of record in the proceedings before the agency." 
McKillip filed her original petition within the time required and effected service of her petition by a copy
attached to a citation issued by the district court and delivered to the ERS in a manner authorized by Texas
Rules of Civil Procedure 99 through 107. The ERS does not complain of such service itself. McKillip did
not effect in the same manner service of her petition upon GLH. Instead, McKillip served a copy of her
petition upon GLH by mailing the copy to the attorney who had represented GLH in the agency
proceeding, relying apparently upon the informal-service provisions of Texas Rules of Civil Procedure 21
and 21a. These provisions permit such service of every "notice" required by the rules of procedure "and
every pleading, plea, motion, or other form of request required to be served . . . other than the citation to
be served upon the filing of a cause of action." Tex. R. Civ. P. 21a (emphasis added). The ERS contends
such manner of service upon GLH is not authorized by APA section 2001.176(b)(2). We agree.

 It is indisputable that McKillip's original petition, filed with the district clerk, was a pleading
that initiated a cause of action. See APA § 2001.176(a). Hence, it was a pleading within the exception
of Texas Rule of Civil Procedure 21a pertaining to service by "citation to be served upon the filing of a
cause of action." This indicates that APA section 2001.176(b)(2) requires service of the petition by
attaching a copy thereof to a citation issued by the district court, delivered by a proper person in a proper
manner, with a return thereof made to the court, all as governed by Rules 99 through 107 of the Texas
Rules of Civil Procedure.

 This interpretation of APA section 2001.176(b)(2) is buttressed by APA section 2001.175
requiring the agency to send to the reviewing court the original or a copy of the agency record "[a]fter
service of the petition . . . and within the time permitted for filing an answer." (emphasis added). Only
a citation provides for an assured date certain for calculating "the time permitted for filing an answer" for
the commands in the citation are directed to the person whose interests are to be bound and the return
thereof must state "when the citation was served and the manner of service," ordinarily by delivery to the
person named in the citation. In contrast, Rule 21a permits service of a paper upon a "party" or his "duly
authorized agent or attorney of record" by mail or by telephonic document. Under the first mode of service
authorized by Rule 21a, service "shall be complete upon deposit of the paper" in a post office or official
postal depository; under the second mode of service, service "shall be deemed served the following day"
when the document is transferred after 5:00 p.m. local time of the recipient, or the day of transfer if before
that time. The person serving the paper by either method need only verify "the fact of service." Our
construction of APA section 2001.176(b)(2) is, moreover, the same as that arrived at by courts in other
jurisdictions that have construed the same statutory language copied, like section 2001.176(b)(2), from
section 15(b) of the 1961 Model State Administrative Procedure Act. (4)

 We hold, therefore, that APA section 2001.176(b)(2) required service of the plaintiff's
petition upon the "agency and each party of record in the proceedings before the agency" by means of
attaching a copy of the petition to a citation, issued and served in a manner authorized by Texas Rules of
Civil Procedure 99 through 107. Consequently, McKillip's mailing a copy of her petition to GLH's
attorney, under the provisions of Texas Rules of Civil Procedure 21 and 21a, did not constitute the service
required by APA section 2001.176(b)(2) and did not bring GLH's interest before the court for
adjudication. This conclusion does not, however, dispose of ERS's point of error.

 The record reveals that GLH filed in the district court cause an original answer containing
a general denial, a plea that GLH was not a party because it was not "properly and timely served," and a
plea that GLH be dismissed or, alternatively, that the decision of the ERS be affirmed. This answer
constituted a voluntary general appearance by GLH in the lawsuit "so as to dispense with the necessity for
the issuance or service of citation upon [GLH]." Tex. R. Civ. P. 121. Moreover, GLH's general
appearance accomplished the very purpose of APA section 2001.176(b)(2)--to vest in the reviewing court
a power to bind GLH's interest by a final judgment in the cause. We do not believe the strict-compliance
doctrine of Mingus forbids such a voluntary submission to the district court's jurisdiction. By invoking the
rules of procedure pertaining to service of citation, we believe APA section 2001.176(b)(2) necessarily
made applicable the companion provisions of Texas Rule of Civil Procedure 121 in the absence of any
statutory provision to the contrary. We hold, therefore, that GLH's voluntary general appearance vested
subject-matter jurisdiction in the district court as effectively as if McKillip had procured service of her
petition by citation as contemplated in APA section 2001.176(b)(2). There remains, however, another
issue to be considered in connection with the ERS's first point of error complaining that the district court
lacked subject-matter jurisdiction.

 After its voluntary general appearance by an answer filed in the cause, GLH filed a "Notice
of Non-Suit" on the day of trial, presumably under Texas Rule of Civil Procedure 162 authorizing a
plaintiff to take a non-suit if done in a timely manner and without prejudice to an adverse party's claim for
affirmative relief. GLH apparently reasoned that its answer amounted to a plea in intervention, giving it the
position of a plaintiff. However doubtful this reasoning, we believe it is immaterial. Because the district
court acquired subject-matter jurisdiction on the filing of GLH's original answer, GLH's subsequent non-suit could not retroactively deprive the district court of subject-matter jurisdiction of McKillip's claim for
affirmative relief. See Williams v. National Mortg. Co., 903 S.W.2d 398, 403 (Tex. App.--Dallas 1995,
writ denied).

 For the foregoing reasons, we hold the district court possessed subject-matter jurisdiction
and overrule the ERS's first point of error.


COMPLIANCE WITH APA § 2001.058(e)



 GLH's disability insurance policy excluded from coverage McKillip's undisputed disability
if it was


caused or contributed to by, or is a consequence of, an injury or sickness for which
[McKillip] received medical treatment or services . . .during the three-month period
immediately prior to



August 26, 1991, the date she began state employment and came generally within policy coverage. The
controversy reduced to whether McKillip's disability was caused by degenerative arthritis, resulting from
the scoliosis that had plagued her since childhood, or from inflammatory arthritis that arose soon after
she commenced state employment on August 26, 1991.

 The hearing officer received evidence that McKillip suffered from scoliosis for many years
before 1991 and that it caused pain in her lower back. Between February 1991 and August 1991, five
physicians diagnosed the scoliosis and made recommendations for its treatment, including surgery. After
August 26, 1991, three other physicians who examined McKillip reached the same conclusions. In
October 1991, a physician examined McKillip on her complaint that she had trouble sitting at her computer
and using her hands. In January 1992, another physician examined McKillip on her complaint of "joint
pain." These complaints outside the lower-back area apparently began in September 1991. Another
physician, a rheumatologist, examined McKillip in May 1993. He concluded that her disability--pain and
stiffness in her arms, hips, knees, and hands--was caused by inflammatory arthritis in her peripheral
joints and not by degenerative arthritis resulting from scoliosis; that such disabilities could arise suddenly
and were commonly misdiagnosed by physicians; and that scoliosis would not account for stiffness in the
arms, hips, knees, and hands.

 Based upon findings of fact and reasons set out at length in her proposal for decision, the
administrative law judge concluded from the conflicting evidence that McKillip's disability was caused by
"seronegative inflammatory arthritis with secondary carpal tunnel syndrome" affecting her hands, shoulders,
hips, and knees and was "not related to degenerative arthritis of the back associated with the scoliosis or
deformity in her spine." Accordingly, the administrative law judge proposed conclusions of law that the
disability was caused by the inflammatory arthritis which "can develop literally overnight, or insidiously over
a number of months"; that the condition arose within six months after August 26, 1991; and that McKillip
did not receive treatment for the condition within the three months preceding that date.

 In reaching a contrary decision, the ERS listed in its final order five findings of fact
summarizing the opinions of four physicians who examined McKillip between June 4, 1991, and January
6, 1992. These support a conclusion that McKillip's disability was caused by lower-back pain due to
scoliosis. The findings do not mention the pain and stiffness in her arms, hips, knees, and hands. From
these findings, the ERS concluded McKillip's disability was due to a condition for which she received
medical treatment during the three months immediately before August 26, 1991. That is to say, the ERS
attributed causation to degenerative scoliosis as opposed to inflammatory arthritis. The ERS denied
McKillip's claim based upon the agency's findings of fact and conclusions of law.

 The district court reversed the resulting agency order for want of compliance with the
provisions of APA section 2001.058(e). In its second point of error, the ERS contends the district court
erred in this respect.

 APA section 2001.058(e) provides as follows:


A state agency may change a finding of fact or conclusion of law made by the
administrative law judge . . . only for reasons of policy. The agency shall state in writing
the reason and legal basis for a change made under this subsection.



APA § 2001.058(e) (emphasis added). The word policy as used in the statute means a matter involving
the public interest, such as a right, duty, or expectation of the community at large derived, for example, from
a statute administered by the agency, a constitutional provision, or another source of law. (5) The term legal
basis refers to the source from which the policy is derived. The word reason requires the agency to
articulate a rational connection between the stated policy and the change ordered by the agency in the
particular case. See generally Bernard Schwartz, Administrative Law § 7.29 (1984).

 In purported compliance with APA section 2001.058(e), the ERS stated in its final order
that it changed the administrative law judge's findings of fact and conclusions of law for the following
reasons:


[T]he act prescribes fiduciary responsibility to provide "uniformity in life, accident and
health benefits" and to promote and preserve "economic security" among state employees. 
To fulfill its fiduciary obligations and properly implement the purposes and objectives of the
Act, the ERS Board of Trustees must construe the contract terms consistent with those
objectives.[ (6)]


In addition, the Appellant had the burden of showing that her disability did not arise from
any pre-existing medical condition . . . . The administrative law judge's recommendation
failed to correctly apply the burden of proof to the facts in light of the controlling contract
terms, and was, therefore, inconsistent with the policy of the Employees Retirement System
of Texas.

 

 We believe the "reasons" stated in the foregoing passage from the final order do not satisfy
the requirements of APA section 2001.058(e). It is obvious that any ambiguous provision in the insurance
policy must be construed in light of and consistent with the purposes and objectives of the State of Texas
Uniform Group Insurance Program and Plan. The final order does not identify what policy provision the
agency had in mind. We must assume the agency intended the policy exclusion for no other policy
provision in the contract appears to be relevant. The final order does not state the exclusion is ambiguous
in any respect so that McKillip's disability comes within the exclusion under one interpretation and outside
the exclusion under another. The order does not state what construction of the policy exclusion the ERS
arrived at so as to exclude her claim.

 As we understand the second "reason," the agency resolved the case against McKillip
because she failed to carry a burden of proof that was properly hers under the policy. Presumably this
refers to her burden to prove that her disability was caused by something other than the scoliosis that had
plagued her since childhood. Evidence was received that her disability was caused by inflammatory arthritis
and not by degenerative arthritis associated with her scoliosis. The administrative law judge assigned
controlling weight and legal effect to this evidence. Evidently the agency heads chose to assign controlling
weight and legal effect to the contrary evidence for they found affirmatively that McKillip's disability "was
caused or contributed to by a sickness for which [she] received medical treatment . . . during the three-month period" before August 26, 1991. In other words, the order reflects not that McKillip failed to carry
a burden of proof but that contrary evidence affirmatively established a cause of disability contrary to her
theory of causation. We note in passing that ERS's purported "reason" for changing the findings of fact
and conclusions of law is thus contradicted by what the agency heads found the facts to be, based upon
their view of the evidence relating to causation.

 APA section 2001.058(e) required that the ERS state in its final order the following:

 1. The agency's construction of the policy exclusion (if that was the policy provision
intended) and a rational connection between that construction and the changes the agency made in the
findings of fact and conclusions of law; and

 2. A rational connection between the agency's placing the burden of proof upon McKillip
and the changes the agency made in the findings of fact and conclusions of law, especially in light of the fact
that the administrative law judge's proposal for decision indicates that she placed upon McKillip the burden
of proof throughout.

 The agency order is entirely silent in these respects. We therefore hold the order insufficient
under APA section 2001.058(e) and overrule ERS's second point of error.


INSTRUCTIONS ON REMAND



 In point of error three, the ERS contends the trial court exceeded its authority and violated
the separation of powers doctrine, by remanding the controversy to the agency with certain instructions. 
We agree.

 The district-court judgment below reverses the agency order and remands the case to the
ERS. The judgment then directs as follows:


It is further ordered that this cause is hereby remanded . . . with instructions to the [ERS]
that it is ordered to adopt the Proposal for Decision, including the findings of fact and
conclusions of law therein, which was issued [by the administrative law judge].


It is further ordered that there shall be no further proceedings concerning this matter before
the ERS, apart from those described above in this judgment. After this case has been
remanded to the ERS with instructions to the ERS to adopt the Administrative Law
Judge's Proposal for Decision and the ERS has adopted same, the District Court will not
hear an appeal [sic] from Blue Cross/Blue Shield, Group Life Health, or any other party,
complaining of the order of the ERS adopting the Administrative Law Judge's Proposal
for Decision. This judgment binds all parties to the proceedings below.



 We hold the district court erred in including these instructions in its judgment. The
discretionary power to adopt an administrative law judge's proposal for decision is vested by statute in the
ERS, not in a district court. Ins. Code art. 3.50-2, § 4B(c). Moreover, a reviewing court has no power
to exercise an essentially administrative function. See, e.g., Gerst v. Nixon, 411 S.W.2d 350, 354 (Tex.
1966); Davis v. City of Lubbock, 326 S.W.2d 699, 714 (Tex. 1959). "[T]he guiding principle, violated
here, is that the function of the reviewing court ends when an error of law is laid bare." Federal Power
Comm'n v. Idaho Power Co., 344 U.S. 17, 20 (1952); see also, Federal Communications Comm'n
v. Pottsville Broadcasting Co., 309 U.S. 134, 138 (1939). We sustain the point of error and will modify
accordingly the judgment below.


SUBSTANTIAL-EVIDENCE REVIEW



 In point of error four, the ERS contends the district court erred in failing to find the agency
decision supported by substantial evidence. We need not decide the point of error for we have held the
district court properly reversed the agency decision on the ground that McKillip's substantial rights were
prejudiced by the unlawful procedure and statutory violation described in our discussion of APA section
2001.058(e). See APA § 2001.174(2)(A),(C); Texas State Bd. of Pharmacy v. Seely, 764 S.W.2d
806, 809-10 (Tex. App.--Austin 1988, writ denied) (court of appeals must sustain district-court judgment
reversing agency order if judgment correct on any legal ground alleged in petition).

 For the reasons given above, we modify the trial-court judgment by deleting therefrom the
instructions quoted above. We direct that the remand be general. See Tex. R. App. P. 43.2(b). As
modified, we affirm the judgment below.



 

 John Powers, Justice

Before Chief Justice Carroll, Justices Powers and Jones

Modified and, as Modified, Affirmed

Filed: November 20, 1997

Publish
1. See 34 Tex. Admin. Code § 67.17 (1977) (The "insurer," defined as a company providing
coverage under article 3.50-2, "shall be considered a party" to any agency proceeding involving a question
of eligibility or coverage). 
2. Blue Cross and Blue Shield of Texas, Inc. is evidently the parent company of GLH. For
convenience, we shall refer hereafter to GLH alone. Their interests appear to be identical for purposes of
the appeal. Neither is a party on appeal.
3. Tex. Gov't Code Ann. § 2001.176 (West 1997). The statute governs suits for judicial review
of contested-case decisions conducted under the Administrative Procedure Act (APA) and provides as
follows:


 (a) A person initiates judicial review in a contested case by filing a petition not later than
the 30th day after the date on which the decision that is the subject of complaint is final
and appealable.


 (b) Unless otherwise provided by statute:


 (1) the petition must be filed in a Travis County district court;


 (2) a copy of the petition must be served on the state agency and each party of
record in the proceedings before the agency; and


 (3) the filing of the petition vacates a state agency decision for which trial de novo is
the manner of review authorized by law but does not affect the enforcement of an
agency decision for which another manner of review is authorized.


Tex. Gov't Code Ann. § 2001.176 (West 1997) (emphasis added).
4. See Tolly v. Department of Human Resources, 621 A.2d 719, 720 (Conn. 1993); Gibson
v. City of Racine Police & Fire Comm'n, 366 N.W.2d 144, 146 (Wisc. App. 1985).
5. A primary function of administrative agencies is to translate broadly stated legislative policies into
more particular policies susceptible of practical application. See generally James M. Landis, The
Administrative Process (1938). This is ordinarily done by agency rulemaking. See Tex. Gov't Code
Ann. § 2001.003(6)(A), §§ 2001.021-.036. A presumption favors this course. See 1 Frank E. Cooper,
State Administrative Law 177-85 (1965). Policymaking through rulemaking is not always possible,
however, and an agency may be justified in formulating and implementing administrative policy in other
ways, even in the course of adjudicating a particular contested case. See generally Southwestern Bell
Tel. Co. v. Public Util. Comm'n, 745 S.W.2d 918, 926-27 (Tex. App.--Austin 1988, writ denied);
Cooper, supra. 
6. We note that the statute on which the ERS relies for its policy statement is broader than the
portion quoted. Tex. Ins. Code Ann. art. 3.50-2, § 2 (a) - (g). Some sections are directed at providing
benefits for the individual employee as well as at general concerns, e.g., "to encourage employment by and
service to the State of Texas as a career profession for persons of high standards of competence and
ability." The subsection on which the ERS relies reads: "to recognize and protect the state's investment
in each permanent employee by promoting and preserving economic security and good health among state
employees and their dependents." The use of the word "each" employee and the joinder of economic
security and health may raise a question whether this particular section is directed toward the plan's
security or the security of the individual employee.



 we have held the
district court properly reversed the agency decision on the ground that McKillip's substantial rights were
prejudiced by the unlawful procedure and statutory violation described in our discussion of APA section
2001.058(e). See APA § 2001.174(2)(A),(C); Texas State Bd. of Pharmacy v. Seely, 764 S.W.2d
806, 809-10 (Tex. App.--Austin 1988, writ denied) (court of appeals must sustain district-court judgment
reversing agency order if judgment correct on any legal ground alleged in petition).

 For the reasons given above, we modify the trial-court judgment by deleting therefrom the
instructions quoted above. We direct that the remand be general. See Tex. R. App. P. 43.2(b). As
modified, we affirm the judgment below.



 

 John Powers, Justice

Before Chief Justice Carroll, Justices Powers and Jones

Modified and, as Modified, Affirmed

Filed: November 20, 1997

Publish
1. See 34 Tex. Admin. Code § 67.17 (1977) (The "insurer," defined as a company providing
coverage under article 3.50-2, "shall be considered a party" to any agency proceeding involving a question
of eligibility or coverage). 
2. Blue Cross and Blue Shield of Texas, Inc. is evidently the parent company of GLH. For
convenience, we shall refer hereafter to GLH alone. Their interests appear to be identical for purposes of
the appeal. Neither