# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-01-00445-CV
===============

**Board of Trustees of Mission Consolidated Independent School District, Appellant**

**v.**

**Central Education Agency and Dizdar Development, Inc., Appellees**

======================================================================
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. 99-11705, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING
======================================================================


The Board of Trustees of Mission Consolidated Independent School District (Mission) appeals from a district-court judgment affirming a final order issued by the Commissioner of Education (Commissioner) of the Central Education Agency.[1] On appeal, Mission raises two issues, contending that: (1) the Commissioner's decision is not supported by substantial evidence, *see* Tex. Gov't Code Ann. § 2001.174(2)(E) (West 2000); and (2) the Commissioner erred in reopening the administrative record and admitting particular evidence following a general remand, *see id.* § 2001.174(2)(B), (D). Because we find substantial evidence to support the Commissioner's order and no error in reopening the administrative record, we will affirm the judgment and the order.

---

[1] The parties refer to the agency interchangeably as the Central Education Agency (CEA) and the Texas Education Agency (TEA). The education code states that the agency is called the Texas Education Agency. *See* Tex. Educ. Code Ann. § 5.001 (West Supp. 2002). We will refer to the agency as CEA throughout this opinion as that is how the agency is named in the notice of appeal.

**FACTUAL AND PROCEDURAL BACKGROUND**

The events culminating in this appeal began nine years ago with a landowner's request to neighboring school districts regarding approximately thirty acres of land. The landowner, Dizdar Development, Inc. (Dizdar),[2] owns subdivided lots in Hidalgo County, about half of which lie in the Mission district, with the other half in the Sharyland district. In 1992, Dizdar initiated in each school district a proceeding pursuant to former section 19.0221 of the Texas Education Code (hereinafter section19.0221) to detach the subdivided lots from the Mission district and to annex them to the Sharyland district.[3] The land Dizdar sought to detach yielded only a small fraction of the Mission district's revenue; Mission's board nonetheless voted to deny Dizdar's request. Sharyland's board also voted against the annexation. Dizdar appealed the decisions of both boards to the Commissioner under section 19.0221(i), which provided for a *de novo* review by the Commissioner.

---

[2] The petitions for detachment and annexation were actually filed by Marted, a general partnership and Dizdar's predecessor in interest. For the sake of convenience, we will refer simply to Dizdar.

[3] *See* Act of May 10, 1991, 72d Leg., R.S., ch. 152, § 1, 1991 Tex. Gen. Laws 742 (formerly codified at Tex. Educ. Code Ann. § 19.0221). Titles one and two of the education code were reenacted and revised in 1995, during the pendency of these proceedings. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207. Former section 19.0221 is currently codified at section 13.051 of the code. *See* Tex. Educ. Code Ann. § 13.051 (West 1996). It is presumed that statutes operate prospectively unless expressly made retroactive. Tex. Gov't Code Ann. § 311.022 (West 1998). Mission's appeal is governed by the law in effect at the time the proceeding was commenced. We will therefore refer to the code provisions as they existed at the relevant times of this proceeding.

The Commissioner held a hearing on Dizdar's appeal but ultimately concluded that Dizdar had failed to meet the statutory requirements for an appeal under section 19.0221(c). The Commissioner's decision was not based on the merits of Dizdar's appeal; rather, the Commissioner determined that Dizdar's failure to comply with the statute precluded resolution of its appeal on the merits. This Court reversed a district court judgment upholding the Commissioner's interpretation and remanded the controversy to the Commissioner for a determination on the merits. *See Marted v. Central Educ. Agency*, No. 03-97-00267-CV, 1998 Tex. App. LEXIS 208 (Austin Jan. 15, 1998, no pet. h.) (not designated for publication).

Following our remand, the Commissioner held a second evidentiary hearing on the petition on November 17, 1998. Mission moved again that the Commissioner dismiss Dizdar's administrative appeal, this time on the basis of Mission's interpretation of section 19.0221(i) as precluding Dizdar's appeal. The Commissioner disagreed with Mission, and, for the first time determined the controversy on the merits; by now, eight years had passed from the time Dizdar initially sought to detach the subdivided lots from the Mission district. The Commissioner granted Dizdar's petition for detachment from Mission and annexation of the subdivided lots to Sharyland.

Mission sought judicial review of the Commissioner's final order; CEA answered and Dizdar intervened to defend against the appeal. Mission persuaded the district court to reverse the order of detachment and annexation. This Court again reversed the district-court judgment and remanded to the district court. *See Dizdar Dev., Inc. v. Board of Trs.*, No. 03-00-00131-CV, 2000 Tex. App. LEXIS 8029 (Austin Nov. 30, 2000, pet. denied) (not designated for publication). The district court subsequently affirmed the Commissioner's decision. Mission now appeals from that district-court judgment.

**DISCUSSION**

*Substantial Evidence*

Mission contends that a particular finding of fact included in the Commissioner's decision is not supported by substantial evidence and that the Commissioner's decision as a whole is not supported by substantial evidence. In conducting a substantial evidence review, we determine whether the evidence as a whole is such that reasonable minds could have reached the same conclusion as the agency in the disputed action. *Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 30 (Tex. App.—Austin 1999, no pet.). We may not substitute our judgment for that of the agency and may only consider the record on which the agency based its decision. *Id.* The issue for the reviewing court is not whether the Commissioner reached the correct conclusion, but rather whether there is some reasonable basis in the record for the action taken by the Commissioner. *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994). The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. *Stratton*, 8 S.W.3d at 30.

We first address Mission's complaint regarding a particular finding of fact contained in the Commissioner's order.[4] Section 19.0221(i) directed the Commissioner to analyze the proposed detachment and annexation with respect to three factors:

> (1) the educational interests of any future students expected to reside in the affected territory; (2) the educational interests of students in the affected districts; and (3) the

---

[4] Although Mission discusses this finding of fact under its fourth issue, we find that its argument is directed at the evidentiary support for the finding and therefore address it in this section of the opinion.

social, economic, and educational effects of the proposed boundary change, as well as any material adverse economic impact on taxable property in the affected territory.

In its final order, the Commissioner analyzed the facts surrounding Dizdar's application in light of the statutory factors. In looking at the third prong, the "social, economic, and educational effects of the proposed boundary change," the Commissioner concluded that the economic and educational effects of the proposed change would be minimal but that the social effects would be significant. Specifically, the Commissioner described children attending the same schools, car-pooling together, and visiting with each other, all of which the Commissioner concluded help "to create a sense of community." Finding of fact twelve incorporates this analysis and states, "Granting the proposed detachment and annexation would result in important social benefits for children living in the affected area in that the children would attend school with their neighbors."

Mission asserts that the Commissioner considered the interests of children currently living in the affected territory but that the evidence showed there were no inhabitants of the area sought to be annexed; thus, Mission continues, finding of fact twelve is an erroneous finding because it appears to address benefits to students currently residing in the affected territory. CEA responds that although the finding fails to specify "future students," it is nonetheless directed to the educational interests of future students only and thus is not erroneous; in the alternative, CEA maintains that the finding is addressed to the prospective social effects of the boundary change. Based on our review of the record, we disagree that finding of fact twelve is an erroneous finding. The finding clearly contemplates the third, rather than the first prong of section 19.0221(i); like the third prong, the finding addresses the "social benefits" of the proposed change, which as we have already noted,

5

formed the basis of the Commissioner's decision. Therefore, we conclude that the finding is supported by the evidence.

The record also shows that the Commissioner's decision as a whole is supported by substantial evidence. There is evidence to support the finding that social benefits will accrue if children who live in the same community are able to attend school together. The evidence indicated that both Mission and Sharyland provide good educational opportunities to their students and thus the Commissioner concluded that the educational opportunities of students attending schools in the affected area would remain unchanged. There is also evidence in the record to support the Commissioner's finding that the financial loss to Mission would have a minimal effect on the finances and the educational programs of the district. We conclude there is substantial evidence to support the Commissioner's decision and accordingly overrule Mission's first issue.

### *Commissioner's Authority Under General Remand*

In its second, third, and fourth issues, Mission argues that the Commissioner erred in deciding to reopen the evidence upon a general remand and in admitting particular evidence. Mission's argument under its third issue can be summarized as follows: because Dizdar did not raise the inadequacy of the record in its previous appeal, the agency erred by reopening the record and holding a second evidentiary hearing when the cause was remanded for a determination of the merits. It is important to note that when Dizdar's appeal was finally considered on the merits, some seven years had elapsed and circumstances had changed. Nonetheless, Mission contends that the agency was confined to the original record based on a hearing that occurred in 1993.

The proposition advanced by Mission runs counter to the general rule that an agency has wide discretion in fulfilling its administrative functions. *See Gulf States Utils. Co. v. Public Util. Comm'n*, 947 S.W.2d 887, 892 (Tex. 1997) (upon remand, the commission may choose whether to take new evidence or rely on evidence previously received); *Central Tel. Co. of Tex. v. Public Util. Comm'n*, 911 S.W.2d 883, 884 (Tex. App.—Austin 1995, no writ) (on remand to consider rate order in light of intervening supreme court ruling, it is the prerogative of the commission to reopen evidence on the affected question and related issues); *City of San Antonio v. Texas Dep't of Health*, 738 S.W.2d 52, 54 (Tex. App.—Austin 1987, writ denied) (agency has discretion both to reopen hearing and to reconsider its decision to reopen hearing); *City of El Paso v. Public Util. Comm'n*, 609 S.W.2d 574, 578 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.) (on motion for rehearing, agency has discretion whether to reopen administrative record to allow additional evidence).

The decision to reopen the administrative record and take additional evidence generally falls within an agency's fact-finding role and is therefore properly left to the discretion of the agency. Mission's argument to the contrary is based on a misreading of our precedent. Mission misinterprets our decision in *Goeke v. Houston Lighting & Power Co.*, 761 S.W.2d 835 (Tex. App.—Austin 1988), *rev'd on other grounds,* 797 S.W.2d 12 (Tex. 1989), as containing a limit on an agency's discretion following a general remand. In *Goeke,* the Public Utility Commission denied an electric company's request for a certificate to enable it to construct a transmission line across certain property, including that of Goeke, who intervened in the administrative proceeding. 761 S.W.2d at 838. On appeal by the utility, the district court reversed and remanded the controversy to the agency. *Id.* at 840. Goeke alone appealed to this Court to reverse the district-court judgment,

7

arguing that the district court erred in not allowing him to present additional evidence before that court. *Id.* at 845. In rejecting Goeke's argument, we noted that "Goeke is free to convince the Commission, *on remand, that the evidence should be reopened and his evidence received.*" *Id.* at 845 (emphasis added).

In rejecting Goeke's contention that the Commission had no power to reopen evidence upon general remand, we stated:

> In authorizing the reviewing court to remand the case to the agency "for further proceedings," the Legislature did not intend that the remand be a sterile remedy. The Legislature intended rather that the agency be given a meaningful opportunity to exercise its delegated powers to correct any error of law upon which the reviewing court reversed the agency decision and to erase the prejudicial effects of that error.

*Id.* at 846. This passage expressly recognizes that an agency must have the opportunity on remand to exercise its discretion, by reopening the record and taking additional evidence when necessary to fulfill its obligations. Mission focuses on the second sentence of the passage and finds a limitation in the phrase "upon which the reviewing court reversed the agency decision." Under its overly-narrow interpretation, Mission argues that *Goeke* means that an agency can take additional evidence only if it pertains to the errors upon which the remand was granted by the reviewing court.

This interpretation directly contradicts our holding in *Goeke*. Under Mission's interpretation, because we rejected Goeke's point of error, the Commission would not have been able to consider Goeke's additional evidence when the cause was remanded to the agency. We expressly stated, however, that Goeke was "free to convince the Commission, on remand" to reopen the evidence. *Id.* at 845. Here, we remanded Dizdar's appeal to the Commissioner for a determination

8

of the merits; our opinion dealt only with the Commissioner's erroneous interpretation of a statutory provision that had denied Dizdar the opportunity to have its case decided on the merits. Interpreted in its proper context, the passage urged by Mission as a limitation on agencies more appropriately acknowledges that the remand procedure provides the agency with the discretion to fully resolve the case as it sees fit.

We reject Mission's suggestion that the Administrative Procedure Act (APA) limits the Commissioner's ability to consider additional evidence following a general remand for a determination of the merits. Mission asserts that this limitation is found in "section 2001.171 *et seq.*" of the APA. Section 2001.171, however, authorizes judicial review of a final agency decision but does not address an agency's authority following a general remand. *See* Tex. Gov't Code Ann. § 2001.171 (West 2000). Mission fails to identify any other particular section of the APA that contains the limitation it seeks to have imposed on agencies. We hold that upon general remand the Commissioner had the discretion to reopen the hearing and receive additional evidence.[5]

---

[5] Mission asserts that the agency erred by reopening the case because our opinion remanding the cause to the agency "did not mandate a new trial or the taking of any additional evidence." We have held that a court exceeds its authority and violates the separation of powers doctrine when it dictates specific instructions to the agency on remand. *See Employees' Ret. Sys. v. McKillip*, 956 S.W.2d 795, 802 (Tex. App.—Austin 1997, no writ) (holding that the district court erred in ordering the agency to adopt certain findings of fact and to conduct no further proceedings concerning the matter: "a reviewing court has no power to exercise an essentially administrative function"). We note that we have stated that the *McKillip* decision has been overruled on other grounds by implication. *See Sierra Club v. Texas Natural Res. Conservation Comm'n*, 26 S.W. 3d 684, 686 (Tex. App.—Austin 2000, pet. granted). The holding in *McKillip* regarding the limitations on reviewing courts in remanding causes to administrative agencies, however, has not been disturbed.

We also reject Mission's contention that the Commissioner erred in admitting a particular piece of evidence. By the time Dizdar's appeal was being considered on the merits, the board of trustees of Sharyland I.S.D. had come to favor Dizdar's petition for annexation. As a means to express its change in position, the board took a second vote. In its conclusions of law, the Commissioner stated that "[o]nce a board has validly voted to accept or deny a proposed detachment and annexation, a board may not change its vote," thus recognizing that the second vote was "invalid." The board, however, perceived the voting procedure as the only way in which it could make the Commissioner aware of its current position, which the board felt was relevant to the Commissioner's decision. Mission argues that it was improper for the Commissioner to consider the second vote as evidence relevant to the determination of Dizdar's appeal as the vote was "void and of no force and effect."

As discussed above, the Commissioner was required to consider a variety of factors in deciding an appeal under section19.0221, including the educational interests of the affected districts. In its order, the Commissioner expressly stated that the second vote had no legal effect; however, he determined the second vote was relevant to his analysis. We believe this consideration was well within the Commissioner's discretion. But even if the Commissioner erred in considering the current view of the board, we believe any error was harmless. Under the substantial evidence test, we must affirm the agency's order if some reasonable basis exists in the record for the action taken by the Commissioner. *City of El Paso*, 883 S.W.2d at 185. We have already held that substantial evidence exists in the record that supports the agency's decision. Therefore, we overrule Mission's second, third, and fourth issues.

10

**CONCLUSION**

Upon our review of the administrative record, we hold that substantial evidence supports the Commissioner's order. Furthermore, we hold that the Commissioner did not err in reopening the evidence when this cause was remanded for a determination on the merits. Having overruled all of Mission's issues, we affirm the judgment of the district court and the Commissioner's order.

---

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: February 22, 2002

Do Not Publish

11